Filed 2/24/26  In re C.V. CA2/6

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SIX

| | |
|---|---|
| In re C.V. et al., Persons Coming Under the Juvenile Court Law. | 2d Juv. No. B347765 (Super. Ct. Nos. J073352, J073357, J073358) (Ventura County) |
| VENTURA COUNTY HUMAN SERVICES AGENCY, Plaintiff and Respondent, v. STEVEN V. et al., Defendants and Appellants. | |

M.F. (Mother) appeals from the juvenile court's order terminating her parental rights to her eight-year-old son, R.F. and one-year-old twins, S.V. and C.V., and selecting adoption as

the permanent plan. (Welf. & Inst. Code,[1] § 366.26.) On appeal, Mother challenges the court's ruling only as to R.F.[2] She contends the court erroneously found the parental benefit exception and the sibling relationship exception inapplicable. We affirm.

FACTUAL AND PROCEDURAL HISTORY

In September 2023, Mother's five children, Ry.F. (15), Ma.F. (8), R.F. (4), and twins C.V. and S.V. (23 months) were taken into protective custody. Mother was living in a "dirty" motel room with some of the children. The motel manager saw people come in and out of Mother's room at night. During a home visit, a social worker saw a man come out of Mother's bathroom. He appeared to have just used drugs in the bathroom. Mother was also not getting proper care or treatment for S.V., who had cancer.

The Ventura County Human Services Agency (the Agency) filed juvenile petitions alleging the children suffered or were at risk of suffering harm because of Mother's failure to adequately supervise or provide for them with adequate food, clothing, shelter, or medical treatment. (§ 300, subd. (b).) The petitions alleged Mother had a history of substance abuse and engaged in

---

[1] Further unspecified statutory references are to the Welfare and Institutions Code.

[2] R.F.'s father passed away while Mother was pregnant. He is not a party to this appeal.

domestic disputes.[3]  The children were sent to different placements with R.F. sent to a foster family in Ventura County.

The juvenile court sustained the petitions and declared the children dependents of the court.  The court terminated jurisdiction as to Ma.F. and gave full physical and legal custody to his father.  As to the other children, the court ordered reunification services for Mother.

At the six-month review hearing, the juvenile court adopted the Agency's recommendation to continue services.  At the contested 12-month review hearing, the Agency recommended that reunification services be terminated, that Ry.F. be placed in "Another Planned Permanent Living Arrangement (APPLA)," and a section 366.26 hearing be set for R.F. and the twins.  The juvenile court found Mother had not complied with her case plan because she had not found stable housing, addressed her substance abuse issues, drug tested, or participated in counseling.  The court adopted the Agency's recommendations, terminated Mother's reunification services, and set a section 366.26 hearing for R.F. and the twins.

At the section 366.26 hearing, Mother, Steven V., Ry.F., and the social worker assigned to the case testified.  The Agency recommended terminating parental rights to R.F., C.V., and S.V., and counsel for these children agreed.  Mother asserted the parental benefit and sibling relationship exceptions applied.

---

[3] The petitions also included allegations against Steven V., who is father to C.V. and S.V.  He filed separate notices of appeal in this matter.  His appointed counsel filed a brief informing this court that counsel found no arguable issues on appeal.  (*In re Phoenix H.* (2009) 47 Cal.4th 835, 846.)  After giving Steven V. an opportunity to raise any contentions and his failure to raise any issues, we dismissed his appeals.

The juvenile court found R.F., C.V., and S.V. generally adoptable and found neither the parental benefit exception nor the sibling relationship exception applicable.

DISCUSSION

*Parental benefit exception*

Mother contends the juvenile court erred in finding the parental benefit exception did not apply. We disagree.

After reunification services have been terminated, the court sets a section 366.26 hearing " 'to select and implement a permanent plan for the child.' " (*In re Caden C.* (2021) 11 Cal.5th 614, 630 (*Caden C.*).) The juvenile court may order one of three alternatives: adoption, guardianship, or long-term foster care. The statutory preference is for adoption. (*In re Katherine J.* (2022) 75 Cal.App.5th 303, 316; § 366.26 subd. (b)(1).) If the juvenile court finds the child adoptable, it must terminate parental rights unless one of several statutory exceptions applies. (§ 366.26, subds. (b)(1) & (c)(1)(B).)

One exception, the parental benefit exception, exists if the parent establishes by a preponderance of evidence: "(1) regular visitation and contact, and (2) a relationship, the continuation of which would benefit the child such that (3) the termination of parental rights would be detrimental to the child." (*Caden C.*, *supra*, 11 Cal.5th at p. 631, italics omitted; § 366.26, subd. (c)(1)(B)(i).) If the parent meets her burden, then the exception applies because it would not be in the child's best interest to terminate parental rights, and the court must select a permanent plan other than adoption. (*Caden C.*, at pp. 636–637.) We review for substantial evidence the first two elements. We review the third element under the abuse of discretion standard. (*Id.* at pp. 639–640.)

4

Here, it is undisputed Mother met the first element of regular visitation and contact.  The focus is on the second and third elements.

*1.  Beneficial relationship*

Regarding the second element of a beneficial relationship, Mother contends the juvenile court applied the wrong legal standard by focusing on whether Mother occupied a "parental role" in R.F.'s life.  We are not persuaded.  The juvenile court applied the correct law, stating that it must "determine whether the child . . . ha[s] a substantial positive emotional attachment to each parent, the kind of attachment implying that the child would benefit from continuing that relationship." (*Caden C.*, *supra*, 11 Cal.5th at p. 636.)  The court indicated it considered factors including age of the children; the portion of the children's lives spent in the parents' custody versus while they have been removed; the positive or negative effect of the interaction between the parent and the child; and the children's particular needs among other factors that the Court deems appropriate.  (*Id*. at p. 632.)

In analyzing these factors, the juvenile court acknowledged that R.F. was in a "different situation" than the twins because of his age and that he spent a greater portion of his life in Mother's custody.  But the court noted that visitation has never been unsupervised.  And, based on the reports of these supervised visits, the court found that Mother did not demonstrate more than "frequent [and] loving contact" and that pleasant visits were insufficient to meet the second element.

Although the juvenile court considered whether Mother occupied a parental role, *Caden C.*, *supra*, 11 Cal.5th 614 does not prohibit such consideration.  (*In re Katherine J.*, *supra*, 75 Cal.App.5th at pp. 319–321 [no error where the juvenile court did

5

not "summarily state" that the father did not occupy a parental role, and it further explained its reasoning with evidence establishing that a beneficial relationship did not exist]; *In re A.L.* (2022) 73 Cal.App.5th at 1131, 1157 ["whether that parent has a parental role, is a relevant consideration" and *Caden C.* does not state otherwise].) The juvenile court here applied proper considerations and examined the evidence, including the "information in the reports regarding the interaction with the children" during supervised visits to conclude a beneficial relationship was not established.

Here, the evidence supports R.F. did not have a "substantial positive emotional" attachment to Mother. The Agency observed the quality of their family time during the supervised visits have "not been sufficient enough to demonstrate [Mother's] ability to parent independently and safely nor have they progressed to unsupervised visits." During visits, Mother's attention is "diverted towards the twins," leaving R.F. "feeling left out." And, R.F. "separate[s] easily at the end of each visit with no concerns" and no signs of distress. In sum, the juvenile court did not err in finding Mother did not meet the second element.

### 2. Detriment

With respect to the third element, Mother contends the juvenile court abused its discretion by failing to adequately balance the detriment of terminating Mother's parental rights against the benefits of adoption.

In finding the parental-benefit exception inapplicable, the juvenile court need not "recite specific findings relative to its conclusions regarding any or all of the three elements of the exception." (*In re A.L.*, *supra*, 73 Cal.App.5th at p. 1156.) We decline to equate the court's succinct ruling with the failure to

6

conduct a thorough analysis. And here, the court's ruling reflects that it properly analyzed the third element.

"When [the juvenile court] weighs whether termination would be detrimental, . . . the question is just whether losing the relationship with the parent would harm the child to an extent not outweighed, on balance, by the security of a new, adoptive home." (*Caden C.*, *supra*, 11 Cal.5th at p. 634.) Here, the juvenile court looked at this case "from the perspective of [R.F.], what is in his best interest for him." It noted that R.F. enjoyed his foster placement and "gets stability, . . . security, and that's what children need." The evidence supports these findings.

R.F. has been with the same foster placement since the beginning of the dependency case and has bonded with his foster family. He refers to his foster brother as his brother and his foster mother as his mother. He "consistently seek[s] out [his] prospective adoptive parent[] to meet [his] daily physical and emotional needs." R.F. also expressed that he did not want to leave his current placement and feels safe.

"A court abuses its discretion only when ' " 'the trial court has exceeded the limits of legal discretion by making an arbitrary, capricious, or patently absurd determination' " ' " such that " ' " 'no judge could reasonably have made the order.' " ' " (*Caden C.*, *supra*, 11 Cal.5th at p. 641.) Given the lack of evidence that R.F. had a substantial positive attachment to Mother and the substantial evidence establishing R.F.'s stability and close relationship with his adoptive family, the juvenile court did not abuse its discretion in finding Mother did not meet the third element.

*Sibling relationship exception*

Mother contends the juvenile court erred in finding the sibling relationship exception inapplicable. Mother's contention

7

only pertains to Ry.F. and. Ma.F., and not to the twins. We again disagree.

An exception to termination of parental rights exists when "[t]here would be substantial interference with a child's sibling relationship . . . ." (§ 366.26, subd. (c)(1)(B)(v).) To make this determination, courts consider "the nature and extent of the relationship, including, but not limited to, [1] whether the child was raised with a sibling in the same home, [2] whether the child shared significant common experiences or has existing close and strong bonds with a sibling, and [3] whether ongoing contact is in the child's best interest, including the child's long-term emotional interest, as compared to the benefit of legal permanence through adoption." (*Ibid*.)

"If the court determines terminating parental rights would substantially interfere with the sibling relationship, the court is then directed to weigh the child's best interest in continuing that sibling relationship against the benefit the child would receive by the permanency of adoption." (*In re L.Y.L.* (2002) 101 Cal.App.4th 942, 952.) "[W]e apply the substantial evidence standard to the juvenile court's underlying factual determinations, and the abuse of discretion standard to the court's weighing of competing interests." (*In re D.O.* (2016) 247 Cal.App.4th 166, 174.)

Here, the juvenile court acknowledged "there would be some difficulty for [R.F.], if he were not to see his brother [Ma.F.] or his sister [Ry.F.]," but it found that the sibling relationships did not "outweigh the stability that [R.F.] would have with the permanency in an adopted home." The court did not abuse its discretion. R.F. was six years old at the time of the section 366.26 hearing and had not been raised in the same home as Ma.F. or Ry.F. for almost two years. Ry.F. testified that she

8

"ha[s]n't really seen [R.F.] like often," and during visits, he "just plays . . .usually with [Ma.F.]" With Ma.F., R.F. appeared to have a closer relationship. The social worker observed this "brotherly" relationship, but she nevertheless reported there was "not a compelling reason to determine that termination of parental rights would be detrimental to the children." R.F. also did not appear to have a hard time separating from his siblings after visits.

R.F. also appeared to have formed a strong bond with his foster brother and refers to him as his brother. R.F. appeared happy and stable, and he expressed his wish to never leave his foster family's home. In sum, Mother has not demonstrated that this is a "rare" case in which the sibling relationship exception applies. (*In re Valerie A.* (2007) 152 Cal.App.4th 987, 1014.)

DISPOSITION

The order terminating parental rights is affirmed.

NOT TO BE PUBLISHED.

BALTODANO, J.

We concur:

YEGAN, Acting P. J.

CODY, J.

9

Gilbert A. Romero, Judge

Superior Court County of Ventura

_____

Jacob I. Olson, under appointment by the Court of Appeal, for Defendant and Appellant.

Tiffany N. North, County Counsel, Joseph J. Randazzo, Assistant County Counsel, for Plaintiff and Respondent.